

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

Signed October 5, 2006                                    **United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **LRI III, Ltd.,** | § | **Case No. 04-37226 HDH-11** |
| | § | |
| **Debtor.** | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**ON DEBTOR'S OBJECTIONS TO LIFE REBUILDERS' PROOFS OF CLAIM**

This Court heard and took under advisement the Debtor's Objections to Life Rebuilders' Proofs of Claim (the "Objection"). Life Rebuilders, Inc. ("Life Rebuilders") has timely filed two proofs of claim – one for a Developer Fee of $932,025, and one for $600,000 for funds loaned and/or advanced to or for the benefit of Debtor.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This Matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The Court makes the following findings of fact and conclusions of law as to those claims pursuant to Federal Rule of Bankruptcy Procedure 7052:

## FINDINGS OF FACT

1.      Debtor, LRI III, Ltd., was constituted pursuant to that certain First Amended and Restated Agreement of Limited Partnership of LRI III, Ltd., dated as of May 23, 2000, (along with all amendments, the "Partnership Agreement").  LRI Grace Townhomes, LLC, a Texas limited liability company ("LRI Grace") was the sole, original general partner of Debtor.

2.      The sole business of the Debtor is and was the operation of the Grace Townhomes Project, a 112-unit multifamily housing facility in Ennis, Texas, which is rent and income restricted to low to moderate income persons ("Grace Townhomes").  Life Rebuilders, Inc. ("Life"), an Arizona non-profit corporation, was the original developer for the Grace Townhomes.  Life was the 100% owner of Grace, although Life and Grace were separate legal entities.

3.      Debtor obtained financing for Grace Townhomes.  Charter Mac is and was the holder of 100% in outstanding principal amount of those certain Multifamily Housing Revenue Bonds (Grace Townhomes Project) Series 2000, which were issued in the original aggregate principal amount of Five Million Two Hundred Twenty-Five Thousand and Six Hundred Dollars ($5,225,600) (the "Bonds) by Housing Finance Corporation of Ennis ("HFCE") pursuant to that certain Trust Indenture dated as of May 1, 2000 (as amended, modified or supplemented from time to time, the "Indenture") between HFCE and the Trustee.

4.      Debtor and Life entered into an Amended and Restated Development Agreement dated May 23, 2000 pursuant to which, *inter alia*, Life could earn a Developer Fee equal to $709,976.00 or 15% of total project costs (the "Developer Fee).  (Life Ex. F.)  The Developer Fee was earned 20% at the time of the loan closing, 60% during the construction period, and 20%

upon completion of construction. Each of these criteria were met and the Developer Fee was fully earned by Life prior to December 2001. The Developer Fee accrues interest at 12% per annum. The $1,200,000 held in the Earn Out Account could be used for payment of the Developer Fee once such funds were released to the Debtor.

5.      Construction of the Grace Townhomes was completed in approximately November 2001.

6.      Grace was the sole general partner of the Debtor when construction of the Grace Townhomes was completed. Life was the sole developer of the Grace Townhomes when construction of the Grace Townhomes was completed.

7.      On January 3, 2003 THOF, as the sole limited partner of Debtor, gave Grace a Notice of Default alleging certain defaults under the Partnership Agreement. At this time, both THFC and THOF were controlled by Ted Cornwell. (Debtor Ex. 9.)

8.      On February 10, 2003, Charter Mac notified the Partnership of the occurrence of an Event of Default under the Loan Documents due to the Debtor's failure to make the February 3, 2003 payment due on the Bonds (February 1st falling on a Saturday). (Life Ex. S.) This payment was subsequently made prior to February 14, 2003.

9.      On February 28, 2003, THOF abruptly gave Grace notice allegedly under Article 9.2.1 of the Partnership Agreement that Grace was being replaced as the general partner of the Partnership, based upon certain alleged violations of the Partnership Agreement. (Life Ex. W.)

10.     The Amended Partnership Agreement only allows the removal of the general partner for cause, under Article 9.2.1. Upon the proper removal of a general partner for cause, that general partner (here, Grace), if it is an affiliate of the developer (here, Life), would be

obligated to make a Fee Guaranty Advance to the Debtor in the amount of the Developer Fee. Article 5.16.3.

11.     As of February 28, 2003, the Project was performing well and was on track to reach Stabilization (as defined in the Facility Agreement) by the end of the second quarter of 2003.

12.     On February 28, 2003, THOF, replaced Grace as the general partner with THFC Special, another Cornwell related entity, and simultaneously engaged Pace Realty Services, Inc. as the property manager.  The performance of the Grace Townhomes deteriorated thereafter.  *See,* Life Exs. AA, BB.

13.     As the owner of a low to moderate income housing project, Debtor and its investors are able to claim certain tax credits.  Those tax credits are determined based upon a cost certification submitted to the Texas Department of Housing and Community Affairs ("TDHCA").

14.     In the Debtor's Cost Certificates submitted to the TDHCA in February 2003, Debtor claimed the Developer Fee of $932,025 as a cost of constructing the Grace Townhomes and, therefore, as part of the basis from which tax credits were claimed.  (Life Ex. EE.)  The original cost certification was signed by Grace.

15.     After Grace was replaced as general partner, Debtor did not amend the cost certificates.  Debtor's investors have claimed federal income tax credits based, inter alia, on claiming to owe the Developer Fee.

16.     On or about November 3, 2003, as a result of the Debtor's failure to achieve certain debt coverage ratios and occupancy rates as provided for under the Loan Documents, Charter Mac gave the Debtor written notice of failure to attain Stabilization and directed the

Trustee to call the Bonds for mandatory partial redemption in the principal amount of $2,236,648.15, plus accrued interest thereon to the date of redemption (the "Stabilization Payment").

17.     On May 4, 2004, Charter Mac caused a written notice of default and notice of intention to accelerate the Note to be issued.  Payment under the Bonds and the Note were accelerated and became due and payable in full as of June 1, 2004.  Charter Mac and the Trustee gave notice of nonjudicial foreclosure proceedings with respect to the Grace Townhomes and scheduled a foreclosure sale to take place on July 6, 2004.

18.     On July 2, 2004, (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

19.     Debtor's original Bankruptcy Schedules, filed under penalty of perjury, listed Life's Developer Fee claim of $932,025.00 as a general unsecured claim which was due and owing to Life, and not subject to set off.  (Life Ex. E.)

20.     Charter Mac filed a Motion to Dismiss this bankruptcy case in August 2004. Debtor opposed the dismissal.  A hearing was held on September 21 and September 22, 2004. Debtor's representative, Mr. Cornwell, testified regarding the claims and the Debtor's Bankruptcy Schedules.  Mr. Cornwell testified that the Life Developer Fee claim of $932,025.00 was not disputed.  (Life Ex. TT.)  This Court relied on that testimony in declining to dismiss the case, and send it to mediation.

21.     Debtor never notified the IRS or any governmental agency that Debtor did not owe Life the Developer Fee.  Debtor has consistently claimed tax credits based, in part, on owing the

Developer Fee.

22.    Debtor carried the Developer Fee as a debt owed to Life on its financial books and
records as of the years ended December 31, 2002, December 31, 2003, and December 31, 2004,
and as being owed in the amount of $934,025 at year end 2002, 2003 and 2004.  (Life Ex. Y,
Debtor Exs. 16, 17.)  After Grace was removed and replaced as general partner, Debtor  changed
accountants.  For the years ended December 31, 2003 and December 31, 2004, Debtor's financial
statements still scheduled the Developer Fee to Life of $934,025 as being owed by Debtor, but
also booked a "Developer Fee Payable" of $934,025 as being owed by Grace.  (Life Ex. Y.)
Debtor's accountants did not offset the two entries because they were not owed by and to the
same entity – Life was owed the Developer Fee but Debtor claimed Grace owed Debtor the
amount of the Developer Fee because of the removal of Grace as general partner.

23.    In December 2004, this Court approved a settlement among Debtor, Charter Mac,
Life and Grace and others under which, *inter alia*, all claims of the bankruptcy estate against Life
and Grace were released.  The settlement provides at paragraph 15:

Debtor Releases of Life

Effective upon the Effective Date, the Debtor, Cornwell, THFC, THFC
Special, THFC Dallas, THOF, and the THOF Limited Partners (collectively, the
"Debtor Releasors") release LRI Grace, Halla, and Life Rebuilders, and each of
their affiliates, successors and assigns and their current and former officers,
directors, employees, agents, attorneys, accountants and representatives (the "Life
Releasees") from any and all claims, including "claims" as defined under 11
U.S.C. § 101(5), rights, entitlements, demand, suit, causes of action, in law or in
equity, under statute, current or future, known or unknown, contingent or
otherwise, whether actual or potential, of any kind whatsoever including, without
limitation, any and all claims which the Debtor Releasors may have against the
Life Releasees in connection with the Partnership Agreement, State Court Action,
the Loan Documents and the Chapter 11 Case, whether in tort or in contract,
whether present or future, and any other claim under federal, state or local laws
relating thereto, or arising therefrom, with the sole exception that the Debtor shall

not release any defense, offset or right of setoff relating the Life Reserved Claims, which defense, offset or right of setoff are expressly reserved pursuant to the provisions of this Settlement Agreement to attempt to reduce the Life Reserved Claims, but which may not be asserted to seek any affirmative recovery against Life.

Thus, Debtor may not assert any claim against Life or Grace, respectively, other than to set off or reduce a proof of claim filed by Life or Grace, respectively.

24.    Debtor asserts that the Developer Fee claim of Life can be offset against a claim of Debtor for an alleged Development Fee Guaranty allegedly owed by Grace.  However, Debtor may not assert an offset of the Developer Fee claim of Life against the alleged Developer Fee Guaranty allegedly owed by Grace because those claims are not as between the same entities. Debtor did not set off these claims on its own financial records.  Further, Grace has been released from any liability for a Developer Fee Guaranty by virtue of the Court approved settlement.

25    This Court has confirmed a plan of reorganization for Debtor.  The Plan, in material part, provides the following treatment for Life and Grace:

> 4.3    <u>CLASS 3 – General Unsecured Claims of Life (Impaired)</u>
>
> Class 3 shall consist of the Life Reserved Claims held by Life and holders of Class 3 Claims shall receive the following treatment:
>
> (a)    The holders of Class 3 Claims shall be paid 100% of the Allowed Amount of their Class 3 Claims.
>
> (b)    All payments to the holders of an Allowed Class 3 Claim shall be subordinated to any payment owed to any holder of an Allowed Class 1 or Class 2 Claim.

Life Reserved Claims are defined as Claims 2 and 3 filed by Life.

## CONCLUSIONS OF LAW

1.      Grace was removed and replaced as general partner.

2.      Debtor originally scheduled the Life Developer Fee claim as an unsecured claim of $932,025 without setoff or dispute. Debtor testified the Life Developer Fee claim was not disputed, at which time it was advantageous to Debtor to owe Life the Developer Fee claim. This Court relied on the schedules and the testimony in declining to dismiss the case, and sending it to mediation.

3.      Debtor's bankruptcy schedules were signed under penalty of perjury. As such, they constitute judicial admissions. See *In re Rolland*, 317 B.R. 402 (Bankr. C.D. Cal. 2004); *In re George*, 315 B.R. 624 (Bankr. S.D. Ga. 2004). Therefore, Debtor has judicially admitted owing the Developer Fee Claim, without set off.

4.      Judicial estoppel to later assert claims or set off rights against Life and Grace can arise from Debtor's omissions and admissions. See *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004); *Delaney v. Wal-Mart Stores, Inc.*, 488 F.Supp.2d 240 (N.D. Miss. 2005).

5.      Life's Developer Fee proof of claim for $932,025 should be allowed in full as an unsecured claim. This amount is due and owing by Debtor. The confirmed bankruptcy plan treats this claim under Article 4.3. As the result of this bankruptcy, payment of this claim is governed by the Plan and not by the Amended Partnership Agreement or other partnership documents.

6.      Life has not proved, by a preponderance of the evidence, that its proof of claim for $600,000 should be allowed as an unsecured claim.

7.      Any finding of fact which is more properly considered a conclusion of law shall be

so considered.  Any conclusion of law which is more properly considered a finding of fact shall be so considered.

8.      Counsel for Life shall submit an order to the Court consistent with these findings within 15 days.

###END OF FINDINGS AND CONCLUSIONS###